UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAELJON LORD,

                Petitioner,
                                         **DECISION AND ORDER**
                                         **No. 09-CV-0615(MAT)**

        -vs-

CALVIN O. RASBATT, Superintendent,

                Respondent.

_____

## I.   Introduction

Pro se petitioner Michaeljon Lord ("Lord" or "Petitioner") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his detention in Respondent's custody. Lord is incarcerated pursuant to a judgment of conviction entered against him in Cattaraugus County Court, on October 10, 2006. Lord was convicted, upon a jury verdict, of rape in the second degree, criminal sexual act against a child in the second degree, endangering the welfare of a child, and unlawfully dealing with a child in the first degree.

## II.  Factual Background and Procedural History

Petitioner, then twenty-one-years-old, met fourteen-year-old S.E. and her friend, Kristen.[1] Kristen was fourteen- or fifteen-

_____

[1]
    Pursuant to N.Y. Civil Rights Law § 50(b), Respondent has referred to the victim, who is a minor, by her initials to protect her privacy. Respondent has referred to the friend, who was not named in the indictment and who did not testify at trial, by her first name.

years-old at the time. When S.E. and Kristen when to church on July 31, 2005, they met Petitioner who asked if they wanted to go to his house. Petitioner told the girls he was eighteen.

At Petitioner's house, all three smoked marijuana. Petitioner then had sex with Kristen while S.E. remained in the room and looked out the window, apparently to give them privacy. Petitioner and S.E. walked Kristen to her boyfriend's house. Petitioner and S.E. returned to his house.

The mother of Petitioner's friend, Devon, came over to ask him to obtain marijuana for her and Devon, so Petitioner went out to purchase some. When he returned, he and S.E. went over to Devon's house where everyone smoked marijuana again.

Later that evening, Petitioner and S.E. had sex twice more. In the morning, they showered together and had sex two more times. S.E. also performed oral sex on Petitioner. Petitioner initiated the sexual activity, although S.E., who had told Petitioner she was fourteen, did not object or resist.

Afterwards, the two went outside and sat on the porch. In the meanwhile, S.E.'s mother had alerted the police that her daughter had run a way. The state troopers eventually arrived at Petitioner's house and brought S.E. back to her mother's house.

Upon learning that her daughter had had sex with Petitioner, S.E.'s mother brought her to the hospital where medical staff

-2-

performed a pelvic examination on S.E. and collected samples for testing.

S.E. later gave a statement to the police, and the following day, troopers spoke to Petitioner at the barracks. When one of the investigators asked Petitioner if he had learned anything from the episode, Petitioner replied, "Yep, stay away from the young 'uns." T.161-62, 177-78.[2] Petitioner, who had been given his <u>Miranda</u> warnings and waived his rights, gave a written and signed statement to the police.

Petitioner's statement was consistent with S.E.'s testimony, except that he asserted that S.E. initiated the sexual activity in the morning. According to Petitioner, S.E. came into his bedroom and woke him up. They started undressing, and S.E. "pulled [his] pants down and gave [him] head", and then they had intercourse with "[S.E. . . . on top of [Petitioner]." T.170. Petitioner stated, "I didn't force S.E. to do anything." <u>Id.</u> When they finished having sex, they went downstairs and then the police arrived. Petitioner stated that S.E. had informed that she was "16, going on 17" and admitted that he had "no idea how old Kristen was". T.170-71.

The jury returned a verdict convicting Petitioner as charged in the indictment on August 24, 2006. On October 10, 2006, Petitioner was sentenced to consecutive, indeterminate terms of

---

[2]

Citations to "T.__" refer to pages from Petitioner's trial transcript.

6 to 12 years on the rape and criminal sexual act convictions and lesser concurrent terms on the remaining two convictions.

After the conclusion of his unsuccessful direct appeal, Petitioner timely filed the instant petition in which he raises the following grounds for relief: (1) the trial court erred in not ordering a competency hearing <u>sua</u> <u>sponte</u>; (2) the trial court erred in admitting prior bad act/uncharged crimes evidence; (3) the trial court relied upon inaccurate information in making its sentencing determination; and (4) the trial court imposed a harsh and excessive sentence.

For the reasons set forth below, the petition is dismissed.

## III. Analysis of the Petition

### A.    Failure to Order a Competency Hearing

Lord contends that the trial court deprived him of due process by failing to <u>sua</u> <u>sponte</u> order to determine whether he was competent to stand trial. On appeal, the Fourth Department rejected this contention on the merits, inasmuch as the record was "devoid of any indication that the court had 'a "reasonable ground for believing that [the] defendant [was] in such state of idiocy, imbecility or insanity that he [was] incapable of understanding the charge, indictment or proceedings or of making his defense[.]"'" <u>People v. Lord</u>, 59 A.D.3d 1010, 1010 (App. Div. 4th Dept. 2009) (quotations omitted; alterations in original). This claim does not

warrant habeas relief because the state courts did not incorrectly apply federal law.

Well-established Supreme Court precedent holds that where the evidence "raise[s] a sufficient doubt as to a defendant's competence to stand trial, the failure of the trial court to conduct a competency hearing sua sponte violates due process." Nicks v. United States, 955 F.2d 161, 168 (2d Cir. 1992) (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)). A defendant is incompetent to stand trial if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Drope v. Missouri, 420 U.S. 162, 171 (1975). Under New York state law, an incapacitated defendant is one who, "as a result of mental disease or defect[,] lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. Crim. Proc. Law § 730.10(1). This test appears parallel the federal test. Roland v. Rivera, 06-CV-6543(DGL)(VEB), 2011 WL 1343142, at *7 (W.D.N.Y. Jan. 6, 2011) (citations omitted).

Although the Supreme Court has not established a fixed standard to evaluate a trial court's decision to have conducted a competency hearing, it has identified a number of factors to consider, including attorney representations regarding the defendant's mental status, prior medical opinions on the defendant's competence to stand trial, evidence of a defendant's

prior irrational behavior, and the defendant's demeanor at trial. See <u>Drope</u>, 420 U.S. at 177 n. 13, 180. The Supreme Court also has emphasized the importance of considering the numerous possible indicia of incompetency <u>in toto</u>. See <u>id.</u> at 179-80 ("[I]n considering the indicia of petitioner's incompetence separately, the state courts gave insufficient attention to the aggregate of those indicia in applying the objective standard of [the Missouri competency hearing statute].").

In light of the record, the judge presiding over Lord's trial certainly was well within his discretion in concluding that Lord had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and did not lack "a rational as well as a factual understanding of the proceedings against him." <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (<u>per curiam</u>). Petitioner displayed no signs of irrationality and when he initially requested a "psyche [sic] exam," he did it of his own accord. Petitioner asserted that he needed to "find out" his "mental state", and claimed that his doctor said that the only way he could find out was if he could "get it approved by the Court." When the judge asked what was wrong with his mental state, Petitioner said, "I do not know. I've been on many medications when I was younger. I was on Ritalin. I'm on Adderall right now and I'm Claritin D, and was taking a few other ones, Claritin and Dexatrim

and Strater [sic],[3] and I just need to find out." Based upon his list of medications, Petitioner apparently was being treated for some type of attention deficit disorder and allergies. Petitioner has not brought to the Court's attention any support for the proposition that a person's mental competence is detrimentally affected by either of these conditions or the medications he was taking. Notably, trial counsel did not join in the colloquy at that time.

When trial counsel later attempted to argue Lord was incompetent based upon his "out of context" request for a piece of candy during jury selection, the trial judge correctly pointed out that there was a jar of candy sitting on the table, and both defense counsel and other participants in the proceeding had taken a piece of candy from the jar.

Petitioner, although not intellectually sophisticated, had at least a rudimentary understanding of the function of his trial counsel and the purpose of the trial. Petitioner's claim that he did not know what the roles of the trial judge or the prosecutor were do not reflect a lack of competency, given that this was

---

[3]

Based upon the Court's review of the online Physicians' Desk Reference, http://www.pdr.net, Strattera, Ritalin, and Adderall are indicated for the treatment of attention-deficit disorder with hyperactivity ("ADHD"). Claritin and Claritin D are antihistamines indicated for the treatment of allergies. See id.

Dexatrim (phenylpropanolamine) is used to treat nasal congestion associated with the common cold, allergies, hay fever, or other respiratory illnesses (e.g., rhinitis, sinusitis) and has also been used as a nonprescription diet-aid for weight loss. See http://www.medicinenet.com.

Petitioner's first trial. Also weighing against a finding that Petitioner could not understand his criminal proceeding is the fact he made a personal—and successful—appeal to the trial judge to be allowed to remain at liberty pending sentencing.

There were no prior medical opinions indicating Petitioner was incompetent to stand trial, and, in fact, the doctor who performed the pre-sentence psychiatric evaluation concluded that Petitioner was "not depressed or psychotic" and had "no other major mental illness". Although he was "cognitively limited",[4] he did "understand the court procedure. He knows what a judge does, what a bailiff does, what [a] prosecutor and defender do . . . this patient can go through a court process without any difficulty." Respondent's Memorandum of Law at 16 (quoting Pre-Sentence Report at 2) (quotation marks omitted). See Davis, 2002 WL 2009559, at **1 ("Neither the 1984 or 1986 pre-sentence reports, despite detailing Davis's educational background and mental impairments, concluded that he was incompetent. The 1986 report in fact confirmed that Davis appeared at the time to understand the Court process.").

---

[4]
    A defendant's lower-than-average intelligence quotient does not, even the presence of an impairment such as mental retardation, equate to incompetency. See Davis v. Keane, No. 01-2110-pr, 45 Fed. Appx. 31, 32, 2002 WL 2009559, at **1 (2d Cir. Sept. 3, 2002) (unpublished opn.) ("No clearly established Federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), indicates that Davis's low I.Q. and history of mental impairment alone required the trial court sua sponte to order a competency hearing. Cf., e.g., Atkins v. Virginia, 536 U.S. 304, __, 122 S. Ct. 2242, 2250-51 (2002) ("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. . . . Their deficiencies do not warrant an exemption from criminal sanctions . . . .") (citation to record omitted).

In sum, the record contains no information that would have given the trial court "sufficient doubt as to . . . [his] competence to stand trial." Therefore, the trial judge did not abuse his discretion in declining to order a competency hearing. Petitioner accordingly has not demonstrated that he was deprived of his constitutional right to due process.

**B.   Erroneous Admission of Prior Bad Acts Evidence**

Petitioner contends that the trial court deprived him of a fundamentally fair trial when it admitted evidence that Petitioner had engaged in sexual intercourse with Kristen while in S.E.'s presence as direct proof of the welfare-endangerment charge. The Fourth Department concluded that the evidence was properly admitted "to support the count charging endangering the welfare of a child." People v. Lord, 59 A.D.3d at 1010 (citations omitted).

As an initial matter, errors of state evidentiary law generally do not present a constitutional issue cognizable on habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions ."). Moreover, the Supreme Court has never held that the admission of uncharged crimes to show criminal propensity would violate due process. See id. at 75 n.5 (expressing "no opinion" as to whether due process is violated by the admission of prior crimes evidence to show propensity). Even where a petitioner describes an

evidentiary error as unduly prejudicial, it must be recognized that "not all erroneous admissions of [unduly prejudicial] evidence are errors of constitutional dimension." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998). Here, the trial court's ruling was correct as a matter of New York state law.

In People v. Molineux, 168 N.Y. 264, 61 N.E. 286 (N.Y. 1901), the New York State Court of Appeals articulated the rule that evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. Accord, e.g., People v. Till, 87 N.Y.2d 835, 837 (N.Y. 1995) (evidence of uncharged crimes may be introduced at trial "when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged" and if the probative value of the evidence outweighs any prejudice to the defendant.).

To prove the crime of endangering the welfare of a child, a prosecutor may present evidence of "a series of acts" or a "pattern of sexual behavior toward the children" who are victims of the crime. People v. Keindl, 68 N.Y.2d 410, 421-22 (N.Y. 1986). The evidence that Petitioner engaged in sexual intercourse with S.E.'s friend, Kristen, in S.E.'s presence, tended to establish that he acted in a "matter likely to be injurious to the physical, mental

-10-

or moral welfare of a child less than seventeen years old . . . ."
N.Y. Penal Law § 260.10 (defining endangering the welfare of a
child).

Although the evidence that Petitioner had sexual intercourse
with the victim herself and smoked marijuana with her could have
sufficiently established the child-endangerment count, the
prosecution did not unreasonably conclude that the jury might have
discounted Petitioner's acts with S.E. As Respondent points out,
"[e]vidence of uncharged crimes is not barred merely because the
People are unable to establish their case without it; they are
entitled to present all the admissible evidence available to them."
People v. Steinberg, 170 A.D.2d 50, 73 (App. Div. 1st Dept. 1991),
aff'd, 79 N.Y.2d 673 (N.Y. 1992). Furthermore, S.E.'s testimony
that Petitioner had sex with Kristen corroborated Petitioner's
confession and allowed the prosecution to establish their case
without being entirely dependent on S.E.'s credibility.

Because Petitioner has not demonstrated an error of state law,
let alone an error of federal constitutional magnitude, habeas
relief is not warranted on this claim.

### C. Reliance Upon Inaccurate Information in Determining Sentence

Petitioner contends that the prosecutor incorrectly informed
the trial court at sentencing that Petitioner's crime involved two
victims and that the pre-sentence report included "inaccurate,

-11-

unsupported, and highly prejudicial statements". It bears noting that trial counsel did not identify any errors in the pre-sentence report when he appeared with Petitioner at sentencing.

Moreover, a sentencing court does not run afoul of the constitution when it considers hearsay statements concerning a defendant's other crimes or misconduct. Although Kristen was not identified as a victim in the indictment and did not testify, "'[h]earsay information may unquestionably be used in the discretion of a sentencing judge and given such weight as appears in his discretion to be merited. Such information does not violate due process requirements.'" Hili v. Sciarrotta, 140 F.3d 210, 215 (2d Cir. 1998); see also Williams v. New York, 337 U.S. 241, 250-51 (1949) (stating that the "age-old practice of seeking information from out-of-court sources to guide [sentencing courts'] judgment toward a more enlightened and just sentence," including consideration of pre-sentence reports from the probation department that contain information not provided at trial, does not violate due process). Petitioner's acts with Kristen (providing her with marijuana and having sex with her) plainly constituted criminal behavior involving moral turpitude and thus were relevant to ascertaining the proper sentence. See, e.g., Billiteri v. United States Bd. of Parole, 541 F.2d 938, 944 (2d Cir. 1976) (holding that the sentencing court had "wide latitude" to introduce "all matters bearing upon [defendant's] personal history and behavior,"

and was not "confined to [defendant's] conduct in connection with' his offense"); accord United States v. Campbell, No. 08-1613-cr, 309 Fed. Appx. 490, 491, 2009 WL 382288, at **1 (2d Cir. Feb. 13, 2009) (unpublished opn.). That Kristen did not testify at trial did not preclude the sentencing court from considering her statements when evaluating Petitioner's personal history and behavior for purposes of fashioning a sentence. See Johnson v. Artus, 09 Civ. 9483, 2010 WL 3377451, at *22-23 (S.D.N.Y. Aug. 26, 2010) (denying habeas relief; finding that sentencing court acted well within its discretion in considering hearsay statements from confidential informants which were contained prosecution's pre-sentence memorandum).

Petitioner also contends that the trial court erred in considering his subsequent arrest, while released on bond, for another sexual crime involving a minor victim. Petitioner asserts that the court erroneously failed to "ascertain the accuracy of the unrelated charge". However, as Respondent notes, Petitioner does not dispute that the second arrest occurred.

The Supreme Court has consistently reaffirmed the principle that no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. United States v. Watts, 519 U.S. 148, 151 (1997) (interpreting the federal

sentencing guidelines) (citing <u>Williams v. New York</u>, 337 U.S. at 247). Thus, under both state and federal law, a sentencing court properly accords "great weight" to a subsequent arrest for the same type of crime in determining a sentence that will address "the purpose of a penal sanction, i.e., societal protection, rehabilitation, and deterrence. <u>People v. Farrar</u>, 52 N.Y.2d 302, 305-06 (N.Y. 1981).

Moreover, there is no constitutional obligation that the arrest have resulted in a valid conviction for the sentencing court to consider it. <u>See</u> <u>Williams</u>, 337 U.S. at 247 (defendant convicted of murder and sentenced to death challenged the sentencing court's reliance on information that the defendant had been involved in 30 burglaries of which he had not been convicted; Supreme Court disagreed, explaining that "[h]ighly relevant-if not essential to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics") (footnote omitted). Petitioner accordingly has failed to demonstrate that he sustained a violation of his due process rights at sentencing. <u>See</u> <u>Joyner v. Ercole</u>, 06-CV-486, 2010 WL 4457769, at *20 (E.D.N.Y. Apr. 23, 2010) (finding that "even if information result in a voided conviction", the sentencing court was permitted to consider habeas petitioner's prior criminal misconduct).

**D.    Abuse of Discretion in Sentencing**

Petitioner argues that his sentence was harsh and excessive and was an abuse of the trial courts discretion, which allegedly accorded undue weight to his Petitioner's subsequent arrest. As Petitioner admitted on direct appeal, his sentences "are legal in the strictest sense." Petitioner's Appellate Brief at 11, Respondent's Exhibit A. Where, as here, a prisoner's sentence falls within the limits set by the state legislature, he is foreclosed from arguing on habeas review that the sentencing court abused its discretion because such an argument raises no federal constitutional question. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). Because Petitioner's sentence was authorized by New York's Penal Law, his excessive sentence claim is not cognizable on habeas review.

**IV.  Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Under FED. R. APP. P. 3(c)(1), the notice of appeal must (1) specify the party taking the appeal in the caption or body of the notice; (2) designate the judgment, order, or part thereof being appealed; and (3) name the court to which the appeal is taken.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     December 30, 2011
           Rochester, New York

-16-